Sam Kim [SBN 258467]
Yoonis Han [SBN 256151]
**VERUM LAW GROUP, APC**
360 N. Pacific Coast Highway, Suite 1025
El Segundo, CA 90245
Telephone: (424) 320-2000
Facsimile: (424) 221-5010
skim@verumlg.com
yhan@verumlg.com

Attorneys for Plaintiffs SEVERO JOHN HERNANDEZ, UMEET NAND, KRISTOFER BARR, and all other similarly situated persons

[Additional Counsel on Following Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVERO JOHN HERNANDEZ, UMEET NAND, KRISTOFER BARR, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTENSEN BROTHERS GENERAL ENGINEERING, INC., a California Corporation; CALEB CHRISTENSEN, and DOES 1-20, inclusive <br><br> Defendants. | Case No. 5:22-cv-00836 AB (SPx) <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** <br><br> Date: July 28, 2023 <br> Time: 10:00 a.m. <br> Courtroom: 7B <br><br> Complaint Filed: March 17, 2021 <br> Trial Date: None Set <br><br> Judge: Hon. André Birotte Jr. <br> Magistrate Judge: Hon. Sheri Pym |

Daniel J. Brown (Bar No. 307604)
Ethan C. Surls (Bar No. 327605)
**STANSBURY BROWN LAW, PC**
2610 ½ Abbot Kinney Blvd.
Venice, CA 90291
Telephone: (323) 204-3124
dbrown@stansburybrownlaw.com
esurls@stansburybrownlaw.com

Attorneys for Plaintiffs SEVERO JOHN HERNANDEZ, KRISTOFER BARR, and all other similarly situated persons

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF THE LITIGATION ................................................................... 3

   A.  Procedural History ........................................................................................ 3

   B.  Discovery and Data Analysis ........................................................................ 6

   C.  Mediations ..................................................................................................... 7

III.  SUMMARY OF SETTLEMENT TERMS ........................................................... 8

IV.   CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23 ................... 11

   A.  FRCP Rule 23(A) and Rule 23 (B) Requirements are Met ......................... 11

   B.  The Requirements of FRCP Rule 23 (A) Are Met ...................................... 12

      1.  The Settlement Class Satisfies Numerosity ........................................... 12

      2.  The Settlement Class Satisfies Commonality ......................................... 13

      3.  Plaintiffs Satisfy the Typicality Element ............................................... 13

      4.  Plaintiffs and Class Counsel Satisfy Adequacy .................................... 14

   C.  The Requirements of FRCP Rule 23(B)(3) Are Met .................................. 16

V.    CONDITIONAL CERTIFICATION IS APPROPRIATE ................................... 19

   A.  Arms-Length Negotiations ......................................................................... 20

   B.  The Risks, Complexity, Expense and Likely Duration of Further Litigation, and the
       Amount Offered .......................................................................................... 20

   C.  The Likely Expense and Duration of Further Litigation ............................ 21

   D.  The Extent of Discovery Completed and the Stage of the Proceedings ......................... 22

   E.  The Experience and Views of Counsel ....................................................... 22

   F.  The Presence of a Governmental Participant .............................................. 23

VI.     THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS.............................23

A.     The Class Notice Satisfy Due Process and Meet All of the Elements of FRCP Rule

23(C)(2)(B)....................................................................................................................23

B.     The Notice Satisfies Due Process Because It Is Calculated to Give All Settlement Class

Members Notice Though Reasonable Effort .........................................................................24

VII.    CONCLUSION ...........................................................................................................25

# **TABLE OF AUTHORITIES**

**Cases**

*Alberto v. GMRI, Inc.*,
> 252 F.R.D. 652, 665 (E.D. Cal. 2008) .......................................................... 19

*Amchem Prods. v. Windsor*,
> 521 U.S. 591, 620 (1997) ....................................................................... 11, 12

*Armstrong v. Davis*,
> 275 F.3d 849, 868 (9th Cir. 2001) .............................................................. 13

*Bernstein v. Virgin Am., Inc.*,
> 2016 U.S. Dist. LEXIS 154326, *42 (N.D. Cal. 2016) ............................... 18

*Brinker Rest. Corp. v. Superior Court*,
> 53 Cal. 4th 1004, 1033 (2012) .............................................................. 16, 17

*Clesceri v. Beach City Investigations & Protective Servs.*,
> 2011 U.S. Dist. LEXIS 11676, *22 (C.D. Cal. 2011) .................................. 20

*Escano v. Kindred Healthcare Operating Co.*,
> 2013 U.S. Dist. LEXIS 29899, *30-31 (C.D. Cal. 2013) ............................. 17

*Gay v. Waiters' & Dairy Lunchmen's Union*,
> 549 F.2d 1330 (9th Cir. 1977) .................................................................... 13

*Gonzalez v. Preferred Freezer Servs. Lbf*,
> 2013 U.S. Dist. LEXIS 109930, *4-5 (C.D. Cal. 2013) ............................... 24

*Gripenstraw v. Blazin' Wings, Inc.*,
> 2013 U.S. Dist. LEXIS 179214, *9 (E.D. Cal. 2013) .................................. 12

*Haley v. Medtronic, Inc.*,
> 169 F.R.D. 643, 649 (C.D. Cal. 1996) ....................................................... 13

*Hanlon v. Chrysler Corp.*,
> 150 F.3d 1011, 1019 (9th Cir. 1998) ........................................... 13, 14, 15, 18

*Kullar v. Foot Locker Retail, Inc.*,
> 168 Cal. App. 4th 116, 129 (2008) ............................................................ 20

*Lane v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 24762, *19 (N.D. Cal. 2010) ................................. 20

*Lazarin v. Pro Unlimited, Inc.*,
    2013 U.S. Dist. LEXIS 97213, *15 (N.D. Cal. 2013) ................................. 19

*Lou v. Ma Labs., Inc.*,
    2014 U.S. Dist. LEXIS 2665, *5 (N.D. Cal. 2014) ................................... 15

*Moore v. Fitness Int'l, LLC*,
    2013 U.S. Dist. LEXIS 87782, *19 (S.D. Cal. 2013) ................................. 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306, 314 (1950) ................................................................... 24

*Rannis v. Recchia*,
    380 F. App'x. 646, 650 (9th Cir. 2010) ............................................... 24

*Reed v. 1-800 Contacts, Inc.*,
    2014 U.S. Dist. LEXIS 255, *12 (S.D. Cal. 2014) ................................... 19

*Silber v. Mabon*,
    18 F.3d 1449, 1454 (9th Cir. 1994) ..................................................... 24

*Smith v. Microsoft Corp.*,
    297 F.R.D. 464, 468-69 (S.D. Cal. 2014) ............................................. 18

*Staton v. Boeing, Co.*,
    327 F.3d 938, 953 (9th Cir. 2003) ................................................. 13, 19

*Surebeam Corp. Secs. Litig.*,
    2003 U.S. Dist. LEXIS 25022, *16 (S.D. Cal. 2003) ................................. 15

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) .................................... 13, 25

**Federal Statutes**

28 U.S.C. §§ 1331, 1441 and 1446 ................................................................. 5

Fed. R. Civ. P. 23(a) ......................................................... 12, 13, 14, 16, 19

Fed. R. Civ. P. 23(a)(1) ............................................................................. 12

Fed. R. Civ. P. 23(a)(3) ............................................................................. 14

Fed. R. Civ. P. 23(a)(4) ............................................................................. 14

Fed. R. Civ. P. 23(b)(3) ................................................................. 16, 18, 24

Fed. R. Civ. P. 23(c)(2)(B) .................................................................... 23, 24

Fed. R. Civ. P. 23(c)(3) ............................................................................. 23

Fed. R. Civ. P. 23(e) ................................................................................. 19

Fed. R. Civ. P. 23 ..................................................................................... 25


**California Statutes**

California Civil Code § 1542 ............................................................... 2, 9, 11

Labor Code § 1174 ................................................................................... 18

Labor Code § 226 ..................................................................................... 18

Labor Code § 2698 ................................................................................... 2, 4

Labor Code § 2699 ...................................................................................... 8

Labor Code § 2802 ................................................................................... 17

Labor Code §§ 201-203 ............................................................................ 18

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 28, 2023, at 10:00 a.m., in Courtroom 7B of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 90012, Plaintiffs Severo John Hernandez, Umeet Nand, and Kristofer Barr (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, will move for an Order: (1) granting preliminary approval of the Parties' Stipulation of Class and PAGA Settlement ("Settlement"); (2) granting conditional certification of the Settlement Class; (3) appointing Class Counsel; (4) appointing the Class Representatives; (5) appointing a Settlement Administrator; and (6) approving the form of the Class Notice Packet (comprised of the Class notice and Request for Exclusion Form). This Motion is made on the grounds that the Settlement is fair, adequate, and reasonable given the relative strengths and weaknesses of the claims and defenses; the risks, expense, complexity and likely duration of further litigation; the amount offered in settlement; the experience and views of counsel; and the public policy in favor of quieting litigation. This Motion is based upon the accompanying Memorandum of Points and Authorities, the Declarations of Daniel J. Brown, Ethan C. Surls, Sam Kim, Yoonis Han, Severo John Hernandez, Umeet Nand, Kristopher Barr, and Jodey Lawrence and all exhibits attached thereto, and such other oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.

Dated: June 30, 2023          VERUM LAW GROUP, APC

By:      /s/ Sam Kim
              Sam Kim
              Yoonis Han
              Attorneys for Plaintiffs SEVERO
              JOHN HERNANDEZ, UMEET
              NAND, KRISTOFER BARR, and

all other similarly situated persons

Dated: June 30, 2023             STANSBURY BROWN LAW, PC

                                 By:  ___/s/ Daniel J. Brown___
                                      Daniel J. Brown
                                      Ethan C. Surls
                                 Attorneys for Plaintiffs SEVERO
                                 JOHN HERNANDEZ, KRISTOFER
                                 BARR, and all other similarly
                                 situated persons

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Severo John Hernandez ("Plaintiff Hernandez"), Umeet Nand ("Plaintiff Nand"), and Kristofer Barr ("Plaintiff Barr") (collectively, "Plaintiffs") brings this Motion for Preliminary Approval of Class and Representative Action Settlement (the "Motion") to request that this Court grant preliminary approval of the proposed class action settlement of wage and hour claims, including a claim under the Private Attorneys General Act ("PAGA"), against Defendants Christensen Brothers General Engineering, Inc. ("CBG") and Caleb Christensen ("Christensen") (collectively "Defendants") (collectively, Plaintiffs and Defendants referred to hereinafter as the "Parties"). The basic terms of the Stipulation of Class and PAGA Settlement (the "Settlement" or "Settlement Agreement")[1] provide for the following:

1.  Defendants to pay $250,000.00 to establish the Maximum Settlement Amount.

2.  A Net Settlement Amount derived from the Maximum Settlement Amount (less the amounts specified hereafter) from which approximately 340 Class Members will be allocated a pro rata share for Participating Member Payments according to the number of Class Workweeks each Class Member worked during the Class Period.

3.  An award of attorneys' fees not to exceed 25% of the Maximum Settlement Amount (equal to $62,500.00), and reimbursement for costs and expenses up to $100,000.00, subject to Court approval.

---

[1] A true and correct copy of the fully-executed "Stipulation of Class and PAGA Settlement," is attached as Exhibit A to the Declaration of Daniel J. Brown in Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement ("Brown Decl."), ¶ 18, filed concurrently herewith. Unless otherwise noted, all exhibits cited herein are attached to the Brown declaration. Unless otherwise defined herein, all capitalized terms in this Motion will be used as such terms are used in the Settlement.

4. The Enhancement Payment to each of the three Plaintiffs in the amount of $4,000.00 (totaling $12,000.00) for the time, effort, and risk in prosecuting the Action.

5. The General Release Payment to each of the three Plaintiffs as follows: (a) $4,000.00 to Plaintiff Hernandez; (b) $4,000.00 to Plaintiff Barr; and (c) $2,000.00 to Plaintiff Nand. The General Release Payment is for the execution of a general release and waiver of the California Civil Code § 1542, including the release all rights under section 1542.

6. An allocation of Settlement Administration Costs not to exceed $6,000.00.

7. An allocation of $5,000.00 for settlement of claims for civil penalties under the California Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*. ("PAGA"), of which seventy-five percent (75%) of this amount, or $3,750.00, will be paid to the California Labor and Workforce Development Agency ("LWDA") and the remaining twenty-five percent (25%), or $1,250.00, will be distributed to Aggrieved Employees based on the number of PAGA Workweeks worked during the PAGA Period.

The Settlement Agreement was reached following over two and half years of extensive litigation, over twenty-two depositions, a motion for class certification, expert analysis of the claims for trial, including both the class and representative claims, and two separate private mediations – the first with the Hon. Ronald M. Sabraw (Ret.) on February 9, 2022, and the second with Nikki Tolt, Esq. on May 4, 2023.

Plaintiffs and Class Counsel believe that the terms are fair to Class Members and Aggrieved Employees, and resolving this case will obviate years of continued litigation. As explained in this Motion, the proposed Settlement is fair, adequate,

and falls within the range of reasonableness for preliminary approval. As such, Plaintiffs and Class Counsel respectfully request that this Court enter an order:

1. Granting preliminary approval of the Settlement Agreement;

2. Granting conditional certification of the Settlement Class;

3. Appointing Stansbury Brown Law, PC and Verum Law Group, APC, as Class Counsel;

4. Appointing Plaintiffs Hernandez, Barr, and Nand as the Class Representatives;

5. Appointing Phoenix Settlement Administrator as the Settlement Administrator;

6. Approving the Notice Packet (comprised of the class notice and Request for Exclusion form) that will be sent to the Settlement Class and Aggrieved Employees; and the proposed timeline for administration of the Settlement; and

7. Setting a final approval hearing date.

## II. SUMMARY OF THE LITIGATION

The Settlement aims to resolve a proposed class and representative action lawsuit against Defendants.

### A. <u>Procedural History</u>

Plaintiff Nand filed a putative class action complaint ("Nand Complaint") against Defendant CBG on November 18, 2020, in Los Angeles County Superior Court, Case No. 20STCV44100, which alleged causes of action for: (1) minimum wage violations; (2) failure to pay all overtime wages; (3) meal period violations; (4) rest period violations; (5) failure to reimburse for necessary business expenses; (6) wage statement violations; (7) waiting time penalties; (8) unfair competition; and, (9) failure to pay prevailing wages. *See* Declaration of Daniel J. Brown In Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Settlement ("Brown Decl."), ¶ 7. Plaintiff Nand filed a First Amended Class and

Representative Action Complaint ("Nand FAC") on March 23, 2021, to add an additional cause of action for civil penalties under the Private Attorneys General Act ("PAGA") pursuant to Labor Code Sections 2698 *et seq.* based on claims asserted in the PAGA letter Plaintiff Nand submitted to the LWDA on November 17, 2020 ("Nand PAGA Letter"). *See* Exh. D, Brown Decl., ¶ 7. The Nand Complaint, Nand FAC, and Nand PAGA Letter are referred to herein as the "Nand Action."

Plaintiff Hernandez filed a class action complaint ("Hernandez Complaint") against Defendant CBG on March 17, 2021, in San Bernardino Superior Court, Case No. CIVSB2107947, which alleges causes of action for: (1) minimum wage violations; (2) failure to pay all overtime wages; (3) meal period violations; (4) rest period violations; (5) wage statement violations; (6) waiting time penalties; (7) unfair competition; and, (8) failure to pay prevailing wages. *See* Brown Decl., ¶ 8. Plaintiff Hernandez filed a First Amended Class and Representative Action Complaint ("Hernandez FAC") on September 10, 2021, to add an additional cause of action for civil penalties under the PAGA based on claims asserted in the PAGA letter Plaintiff Hernandez submitted to the LWDA on or about July 1, 2021 ("Hernandez PAGA Letter"). *See* Exh. E, Brown. Decl., ¶ 8.

On March 27, 2022, Plaintiff Nand and Defendant CBG entered into a stipulation to dismiss the Nand Complaint without prejudice for the purpose of coordinating/consolidating the Nand Complaint and the Hernandez Complaint in the San Bernardino Superior Court. Brown. Decl., ¶ 9. On or about March 18, 2022, Plaintiff Barr submitted a PAGA letter to the LWDA and on or about March 21, 2022, Plaintiff Barr submitted an amended PAGA letter to the LWDA (collectively, "Barr PAGA Letter"). *See* Exhs. F and G, Brown. Decl., ¶ 9.

On or about April 21, 2022, Plaintiff Hernandez filed a Second Amended Class and Representative Action Complaint ("SAC"), which served to: (i) include Plaintiff Nand as a named Plaintiff; (ii) include Plaintiff Barr as a named Plaintiff;

(iii) include Defendant Christensen as a named Defendant; and (iv) add an additional cause of action for failure to pay overtime and minimum wage under the Fair Labor Standards Act ("FLSA"). Brown Decl., ¶ 10.

On May 18, 2022, Defendants filed a Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. Brown Decl., ¶ 11; Dkt No. 1.

On September 28, 2022, pursuant to stipulation and Court Order (Dkt. Nos. 21 - 22), Plaintiffs filed the operative Third Amended Class and Representative Action Complaint ("TAC"), which (i) redefined the putative class to include only "Field Employees" (defined below) and (ii) contained additional factual allegations regarding the facially deficient wage statements. Brown Decl., ¶ 12; Dkt. No. 23. The: (i) Nand Complaint; (ii) Nand FAC; (iii) Nand PAGA Letter; (iv) Hernandez Complaint; (v) Hernandez FAC; (vi) Hernandez PAGA Letter; (vii) Barr PAGA Letter (viii) SAC; and, (ix) TAC are referred to collectively herein as the "Lawsuit."

On November 23, 2023, Plaintiffs filed their Motion of Class Certification Under Rule 23, Conditional Collective Action Certification, and Dissemination of Notice Pursuant to 29 U.S.C. § 216(B) ("Class Certification Motion") seeking to certify ten subclasses and one FLSA collective action class all comprised of CBG's Field Employees, defined as "all of Defendants' non-exempt employees in the following positions: Foreman, Operator, Pipelayer, Laborer, Cement Mason, Teamster, Driver, and similarly titled positions" who worked for Defendants from November 18, 2016, up to and through the date of the order granting class certification. Dkt. No. 27; Brown Decl., ¶ 13. On January 23, 2023, Defendants filed their Opposition to Plaintiffs' Motion for Class Certification. Dkt. Nos. 33; Brown Decl., ¶ 13. On February 13, 2023, Plaintiffs filed their Reply In Support of Motion for Class Certification Under Rule 23, Conditional Collective Action Certification, and Dissemination of Notice Pursuant to 29 U.S.C. § 216(B). Dkt. Nos. 34; Brown Decl., ¶ 13. On March 25, 2023, the Court heard oral argument.

Brown Decl., ¶ 13.

On April 24, 2023, the Court issued its Order Denying Plaintiffs' Motion for Class Certification and Certification of FLSA Collective Action in its entirety finding (i) Plaintiffs lack standing to pursue the "facially deficient" wage statement claims and therefore could not certify any subclasses based on those claims, (ii) Plaintiffs failed to establish that Defendants engaged in any uniform practices upon which their theory of commonality for all the subclasses depends, and (iii) Plaintiffs failed to satisfy the more stringent second stage of the FLSA collective action certification analysis to certify the FLSA subclass. Dkt. No. 41; Brown Decl., ¶ 14.

On or about June 29, 2023, the Parties submitted the Stipulation to Dismiss the Individual and FLSA Claims with Prejudice with a Proposed Order. Brown Decl. ¶ 15.

**B. <u>Discovery and Data Analysis</u>**

The Parties have engaged in multiple rounds of formal discovery including: (i) Plaintiff Nand propounding discovery in the Nand Action, (ii) the Parties propounding multiple rounds of written class certification discovery in the Action, (iii) depositions of each named Plaintiff, (iv) depositions of CBG's Federal Rule of Civil Procedure ("FRCP"), Section 30(b)(6) witnesses, and (v) the depositions of at least 19 Class Members that provided declarations in support and against Plaintiffs' Motion for Class Certification. Brown Decl., ¶ 16.

Through this discovery, Plaintiffs sought and obtained, employee handbooks, various relevant policies and procedures, contact information for prospective class members, and Class Member time and pay records. Brown Decl., ¶ 16.

As part of Plaintiffs' Motion for Class Certification, Plaintiffs retained Ms. Laura R. Steiner, MPA and Mr. Gabriel Anello of Employment Research Corporation to conduct a detailed review of time and pay data produced by Defendants to determine: (1) the total number of Field Employees who worked for

Defendants during the Class Period; (2) the total number of Field Employees currently employed by Defendants; (3) the total number of weekly pay periods and shifts worked by all Field Employees during the Class Period; (4) the total number of weekly pay periods worked by all Field Employees during the PAGA Period; (5) the average and median hourly rate of pay; (6) various shift lengths; and, (7) the number of meal period violations based on Field Employees' meal period records. Brown Decl., ¶ 17.; Dkt No. 27-2, Exh. 58-59 (Ms. Steiner's and Mr. Anello's declarations submitted in Support of Plaintiffs' Class Certification Motion).

Moreover, prior to both of the Parties' mediations (discussed below), Plaintiffs retained Mr. Jarrett Gorlick, a Partner and Senior Data Analyst with Berger Consulting Group, to conduct an in-depth damages analysis based on the claims and theories alleged in the TAC and Class Certification Motion. Brown Decl., ¶ 17.

### C. **Mediations**

On February 10, 2022, the Parties attended a mediation with the Hon. Ronald M. Sabraw (Ret), a well-respected mediator for wage and hour claims. Brown Decl., ¶ 18. During the mediation, as well as before, the Parties exchanged their respective positions on the legal theories and claims in the Action. *Id*. The Parties were unable to reach a resolution at the mediation. *Id.*

On April 28, 2023, after the Court denied Plaintiffs' Motion for Class Certification, the Parties attended a second mediation with Ms. Nikki Tolt, Esq., another well-respected mediator for wage and hour claims. Brown Decl., ¶ 18. While the Parties did not reach a settlement at the end of mediation, the Parties continued to engage in settlement discussions with the assistance of Ms. Tolt, while also continuing to actively litigation the Action, and several weeks later were able to reach a class and representative wide global resolution, which included the material terms of the Settlement. *Id.*

Over the next several weeks, the Parties continued to draft and negotiate the long-form Settlement, which was finalized and mutually executed on June 30, 2023 after resolving numerous disputes over the terms of the Settlement. *See* Exhibit A attached to Brown Decl., ¶ 18, Settlement. Lastly, Plaintiffs submitted the Settlement to the LWDA pursuant to Labor Code § 2699(1)(2) on June 30, 2023. *See* Exhibit H, Brown Decl., ¶ 18.

## III. SUMMARY OF SETTLEMENT TERMS

Class Counsel believes that the Settlement submitted to this Court for preliminary approval is a fair and reasonable result for the Settlement Class. In exchange for a release, limited to "any and all wage and hour and/or wage payment claims, obligations, demands, actions, rights, causes of action, and liabilities (including state and federal statutory and common law claims) that accrued or arose during the Class Period that were alleged, or reasonably could have been alleged, based on the facts stated in the operative TAC and/or Plaintiffs' respective PAGA Letters," the Settlement commits Defendants to pay $250,000.00 ("Maximum Settlement Amount"). Settlement ¶ 3. This is a non-reversionary Settlement. Settlement ¶ 3(D). Defendants will also pay their portion of payroll taxes separately and not from the Maximum Settlement Amount. Settlement ¶ 3(E).

The Net Settlement Amount is the Maximum Settlement Amount, less the Enhancement Payments, General Release Payments, payment to the LWDA for its share of PAGA civil penalties, Class Counsel's attorneys' fees and costs award, and costs and fees of settlement administration. Settlement ¶ 4(A).

The Enhancement Payments are the Court approved payments of $4,000 to each named Plaintiff as the Class Representatives for a total of $12,000, in addition to their Participating Member Payments and General Release Payment, in recognition of their efforts and risks in assisting with the prosecution of the Action. Settlement ¶ 3(D)(iv).

The General Release Payment is the Court approved payments of $4,000 to

Plaintiff Hernandez, $4,000 to Plaintiff Barr, and $2,000 to Plaintiff Nand for a total of $10,000 in exchange for their execution of a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542. Settlement ¶ 3(D)(v).

The PAGA Payment is the $5,000.00 allocated to penalties under the PAGA, of which $3,750.00 shall be paid by the Settlement Administrator directly to the LWDA ("LWDA Payment"); and the remaining $1,250.00 shall be distributed to Aggrieved Employees as the "PAGA Payment" based on their proportional number of weekly pay periods worked for Defendants during the PAGA Period ("PAGA Workweek"). Settlement ¶¶ 3(D)(vii), 4(A)(i).

The Class Counsel's costs are the expenses and costs incurred by Class Counsel in connection with litigation of the Action, which are not to exceed $100,000.00 and are paid from the Maximum Settlement Amount. Settlement ¶ 3(D)(vi).[2]

The Class Counsel's fees are the attorneys' fees for Class Counsel's litigation and resolution of the Action, which are not to exceed 25% of the Maximum Settlement Amount, or $62,500.00 and are paid from the Maximum Settlement Amount. Settlement ¶ 3(D)(vi).

The Settlement Administration costs are the costs payable from the Maximum Settlement Amount to the Settlement Administrator for administering this Settlement, which are not to exceed $6,000.00. Settlement ¶ 3(D)(iii).

---

[2] Should the Court grant preliminary approval, Class Counsel will seek an award of attorneys' fees and verified litigation costs from the common fund when seeking final approval. Moreover, as part of the motion for final approval, Plaintiffs will provide the Court with the information necessary for the Court to conduct a lodestar cross-check to determine the reasonableness of the fees requested pursuant to *Laffitte v. Robert Half Int'l, Inc.* (2016) 1 Cal. 5th 480. Moreover, Class Counsel will provide under declaration their itemized cost lists for the Court's review. Brown Decl., ¶ 34.

If the Court grants Final Approval, in exchange for the consideration set forth in the Settlement, the Class Members who do not opt out of the settlement ("Settlement Class Members"), including Plaintiffs, will release Defendant CBG all its affiliated parties and entities, including its past and present affiliates, parents, subsidiaries, predecessors, owners, successors, shareholders, divisions, and each of these entities' past and present directors, officers, managers agents, employees, agents, partners, benefit plans, shareholders, and representatives, and Defendant Caleb Christensen ("Released Parties") from any and all wage and hour and/or wage payment claims, obligations, demands, actions, rights, causes of action, and liabilities (including state and federal statutory and common law claims) that accrued or arose during the Class Period that were alleged, or reasonably could have been alleged, based on the facts stated in the operative TAC and/or Plaintiffs' respective PAGA Letters ("Released Class Claims").[3] Settlement ¶¶ 2(A)-(B). In addition, in exchange for the PAGA Payment set forth in the Settlement, Aggrieved Employees[4] and Plaintiffs as representatives of the State of California and on behalf of the LWDA, will release and discharge Defendants from any and all claims for PAGA civil penalties that accrued or arose during the PAGA Period that were alleged, or reasonably could have been alleged, based on the facts stated in the operative TAC and/or Plaintiffs' PAGA Letters ("Released PAGA Claims").[5] Settlement ¶ 2(C). Aggrieved Employees will be bound by the Judgment entered by the Court as to the Released PAGA Claims and will not be able to opt-out of the release of Released PAGA Claims regardless of whether they opt-out of the class portion of the Settlement. *Id*.

---

[3] The full scope of the Released Class Claims is listed in the Settlement in ¶ 2(B).

[4] Aggrieved Employees are defined as all current and former non-exempt employees of Defendants who worked for Defendants at any time during the period of November 17, 2019, up to the earlier of (i) the date the Court grants Preliminary Approval or (ii) August 30, 2023 (the "PAGA Period"). Settlement ¶ 2(C).

[5] The full scope of the Released PAGA Claims is listed in the Settlement in ¶ 2(C).

Only Plaintiffs will agree to a general release of known and unknown claims and waiver pursuant to California Civil Code § 1542. Settlement ¶ 2(D).

The Parties agreed to use Phoenix Settlement Administrators as the Settlement Administrator. Settlement ¶ 3(D)(iii).

Finally, based on the terms of the Settlement, the Net Settlement Amount is estimated at $55,750.00.[6] Brown Decl., ¶ 19. Based on the estimated Net Settlement Amount divided by the Settlement Class of 340 individuals, the average recovery is $163.97. *Id.*

## IV. CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23

### A. FRCP Rule 23(A) and Rule 23 (B) Requirements are Met

Through this Motion, Plaintiffs request that the Court make appropriate findings and conditionally certify the Settlement Class in this action for purposes of settlement only. To certify a class, a district court must find that the proposed class meets the requirements for class certification. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's original denial of class certification has no bearing on the appropriateness of the Court conditionally certifying the proposed Class for settlement purposes. This is because an order denying class certification is preliminary in nature and a lesser standard for certification is required for settlement. *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982) ("before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative.")

Indeed, courts routinely find class certification appropriate for settlement purposes even after an initial contested motion for class certification is denied. *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1805-08, fn. 19 (holding trial court did not abuse its discretion in certifying a nationwide class for settlement purposes,

---

[6] The numeric breakdown of the Settlement Terms is also listed in Brown Decl., ¶ 19 for ease of reference.

after declining to certify a national class in a contest class certification motion because it is appropriate to apply "a lesser standard of scrutiny [of class certification] for settlement cases.'); *Glob. Mins. & Metals Corp. v. Superior Ct.,* 113 Cal. App. 4th 836, 859, (2003) ("it is well established that trial courts should use different standards to determine the propriety of a settlement class, as opposed to a litigation class certification. Specifically, ***a lesser standard of scrutiny is used for settlement cases***. [citation]. The reason for this is that no trial is anticipated in a settlement class case, so the case management issues inherent in the ascertainable class determination need not be confronted.") (emphasis added.); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.")

As will be discussed below, based on Plaintiffs' allegations in the TAC, the Settlement Class meets all four prerequisites of Rule 23(a) class certification – numerosity, commonality, typicality, and adequacy of representation – in addition to the requirements of Rule 23 (b)(3) – predominance of common issues and superiority of the class action device. Therefore, certification should be granted for settlement purposes.

### B. The Requirements of FRCP Rule 23 (A) Are Met

#### 1. The Settlement Class Satisfies Numerosity

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all class members be impracticable. See Fed. R. Civ. P. 23(a)(1). Plaintiffs need not show that the number is so large that it would be impossible to join every class member. *Gripenstraw v. Blazin' Wings, Inc*., 2013 U.S. Dist. LEXIS 179214, *9 (E.D. Cal. 2013). Here, the Settlement Class is clearly large enough to make joinder impracticable, as Defendants have indicated that it consists of approximately 340 individuals. Settlement ¶ 3(D)(i); *see Gay v. Waiters' & Dairy Lunchmen's Union*,

549 F.2d 1330 (9th Cir. 1977) (finding numerosity for a class with 110 potential class members).

## 2. The Settlement Class Satisfies Commonality

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, there must be "shared legal issues" or "a common core of salient facts." *Staton v. Boeing, Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Courts have construed this commonality requirement permissively, and the Ninth Circuit has stated that "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Commonality is generally satisfied where, as in this case, 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

In the instant case, Plaintiffs' allegations present common legal and factual questions of, inter alia, whether Defendants applied the same compensation, timekeeping, meal period, rest period, wage statement, and reimbursement policies to all Class Members; whether those policies or their implementation resulted in Labor Code violations; whether Defendants' conduct was intentional; and, whether Class Members are entitled to statutory and civil penalties. *See* TAC, Dkt. No. 23.

## 3. Plaintiffs Satisfy the Typicality Element

Typicality exists where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23 (a)(3). The Court does not, however, "need to find that the claims of the purported class representative[s] are identical to the claims of the other class members." *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal. 1996). The Ninth Circuit further stated that "[u]nder the rule's permissive standards, representative claims are

'typical' if they are reasonably coextensive with those absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs allege that they and class members were subject to Defendants' common policies and practices, including: (a) not compensating for work performed prior to the start of their scheduled shift and after the end of their scheduled shift; (b) otherwise underreporting time worked for compensation purposes; (c) not paying all prevailing wages owed; (d) not providing Class Members all legally required meal periods, or paying premium pay in lieu thereof; (e) not authorizing Class Members all rest periods or paying premium pay in lieu thereof; (f) not reimbursing Class Members for all business expenses incurred; (g) not providing accurate, itemized wage statements with all necessary information; and, (h) not paying Class Members all wages owed at the time of separation of employment. *See* Declaration of Severo John Hernandez In Support of Preliminary Approval of Class and Representative Action Settlement ("Hernandez Decl."), ¶ 2; Declaration of Umeet Nand In Support of Preliminary Approval of Class and Representative Action Settlement ("Nand Decl."), ¶ 2; and, Declaration of Kristofer Barr In Support of Preliminary Approval of Class Action Settlement ("Bar Decl."), ¶¶ 2 - 3.

Plaintiffs' alleged injuries, claims, and relief sought are typical of those of the class as they arise out of Defendants' common course of conduct that would entitle Class Members to similar relief. As such, Plaintiffs' representative claims and legal theories are co-extensive with those of the Class, and therefore, the typicality requirement under Fed. R. Civ. Proc. 23(a)(3) is satisfied.

### 4. *Plaintiffs and Class Counsel Satisfy Adequacy*

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative plaintiff does not

have conflicts of interest with the proposed class, and (2) plaintiff is represented by qualified and competent counsel. See *Hanlon*, 150 F.3d at 1020.

The first prong of the adequacy test requires "that the suit not be collusive and plaintiff's interests not be antagonistic to those of the remainder of the class." *In re Surebeam Corp. Secs. Litig.*, 2003 U.S. Dist. LEXIS 25022, *16 (S.D. Cal. 2003); see *Lou v. Ma Labs., Inc.*, 2014 U.S. Dist. LEXIS 2665, *5 (N.D. Cal. 2014). Here, there is no evidence of antagonism between Plaintiffs' interests and those of the Settlement Class. Plaintiffs demonstrate their ability to advocate for the interests of the class by initiating this litigation, gathering documents and information, preparing for and having their depositions taken, and obtaining a fair settlement on behalf of Settlement Class Members. *See* Brown Decl., ¶ 31; Hernandez Decl., ¶¶ 4 - 5; Nand Decl., ¶ 2; Barr Decl., ¶¶ 2 - 3.

As to the second prong, Class Counsel's extensive experience in class action litigation makes them adequate Class Counsel. Brown Decl., ¶¶ 3 - 6; Declaration of Sam Kim In Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement ("Kim Decl."), ¶¶ 3 - 8; Declaration of Ethan C. Surls In Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement ("Surls Decl."), ¶¶ 3- 6; Declaration of Yoonis Han In Support of Plaintiffs' Motion for Preliminary Approval of Class and Representative Action Settlement ("Han Decl.") ¶¶ 3 - 8. Class Counsel have expended considerable time and effort on this case and will continue to do so through final approval. Specifically, Class Counsel conducted extensive investigation of the factual issues, including reviewing documents from Defendants, interviewing and obtaining declarations from Class Members, deposing Defendants' representatives, deposing Class Members, performing a damages analysis, preparing and participating in two mediations after performing

a critical review of the claims and defenses, and moving for class certification. *See generally*, Brown Decl.

Plaintiffs have and will continue to fairly and adequately protect the Class' interests in good faith and should be appointed Class Representatives. Further, Class Counsel have demonstrated throughout the litigation that they are qualified, adequate counsel, warranting appointment as Class Counsel.

## C. <u>The Requirements of FRCP Rule 23(B)(3) Are Met</u>

In addition to the Rule 23(a) requirements, a district court must also find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Plaintiffs contend their claims are based on Defendants' common, class-wide policies and procedures, and that liability may accordingly be determined on a class wide basis, without dependence on individual assessments of liability. See *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012) ("*Brinker*") ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."). As the TAC reveals, Defendants' alleged liability stems from policies and practices that applied to a larger group of employees other than just Plaintiffs.

With respect to Plaintiffs' failure to pay all wages claim, Plaintiffs alleged that: (1) Defendants failed to compensate the Class for all time worked, including pre-shift and post-shift work and that this practice lead to unpaid minimum wages, straight time wages, overtime wages, and prevailing rate wages; and (2) Defendants further failed to pay Class Members all prevailing wages owed by paying Class Members at a lower prevailing wage rate than required according to the work performed, and in other instances, paying Class Members at their non-prevailing wage straight-time rate even when Class Members worked on prevailing wage jobs. Brown Decl., ¶¶ 22 - 23. Common questions predominate over individual

inquiries because Defendants' timekeeping policies and practices applied to the Class, allowing the Court to resolve in one proceeding whether such practices were unlawful. *See, e.g., Santillan v. Verizon Connect, Inc.,* No. 3:21-CV-1257-H-KSC, 2022 WL 4596574, at *3 (S.D. Cal. June 13, 2022) (certifying an off-the-clock claim); *Wood v. Granite Construction Company, et al.*, CIV-S-03-2592-DFL-PAN, 2005 WL 8176551 (E.D. Cal. March 11, 2005) (certifying a prevailing wage claim).

With respect to the meal and rest period claims, Plaintiffs allege that Defendants did not provide compliant meal periods under *Brinker*, because: (1) first meal periods were not always provided and to the extent they were provided, they were provided *after* the fifth hour of work when including pre-shift work; and (2) second meal periods were not provided (nor scheduled) for shifts greater than 10-hours. Brown Decl., ¶¶ 24 – 25. Plaintiffs also allege that Defendants did not provide compliant rest periods under *Brinker* because rest periods were not authorized (nor scheduled). *Id.* Plaintiffs' primary theory of liability for these two claims arises from an alleged common practice that applied to all Class Members, and therefore gives rise to class questions. See*, e.g.*, *Escano v. Kindred Healthcare Operating Co.*, 2013 U.S. Dist. LEXIS 29899, *30-31 (C.D. Cal. 2013). Moreover, the class questions arising out of these claims predominate over individual inquiries because Defendants' meal and rest period practices allegedly applied to the class as a whole, allowing the Court the ability to resolve in one proceeding whether such practices were unlawful.

With respect to the reimbursement claim, Plaintiffs contend that Defendants, as part of uniform policy and practice, did not reimburse employees for (i) cell-phone usage (ii) work boots (iii) safety vests, and/or (iv) hard hats under Labor Code § 2802. Brown Decl., ¶ 26.

With respect to the accurate itemized wage statement claim, Plaintiffs allege a class-wide stand-alone wage statement claim for Defendants' alleged failure to

include the inclusive dates of the period for which the employee is paid and the name and address of the legal entity that is the employer. Labor Code § 226; Brown Decl., ¶ 27. Plaintiffs also allege on a class wide basis derivative wage statement violations based on Defendants alleged failure to pay all wages earned. *Id.* Common questions predominate here since Defendants' wage statements "follow a uniform format," and Defendants' "knowledge of any inaccuracies in its wage statements can be determined on a class-wide basis." *Bernstein v. Virgin Am., Inc.*, 2016 U.S. Dist. LEXIS 154326, *42 (N.D. Cal. 2016). The Court can decide in one proceeding whether Defendants are liable to all Class Members for violations.

Based on the foregoing alleged violations, Plaintiffs alleged derivative claims that Defendants failed to maintain accurate records in accordance with Labor Code § 1174, and that Defendants failed to pay all wages due upon separation of Plaintiffs' and class members' employment in accordance with Labor Code §§ 201-203. Brown Decl., ¶ 28. As these claims are derivate of the other class wide claims, common questions predominate with this claim as well.

Additionally, the class action device proposed herein is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Conditional certification of the Settlement Class will allow Class Members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide. As in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amounts of damages. *Hanlon*, 150 F.3d at 1019-20; *see Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468-69 (S.D. Cal. 2014). These claims "'would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Moore v. Fitness Int'l, LLC*, 2013 U.S. Dist. LEXIS 87782, *19 (S.D. Cal. 2013) (citation omitted).

Finally, no issues of manageability would preclude certification of the Settlement Class. As stated, a court faced with a request for a settlement-only class

like this one need not inquire whether the case would present intractable problems of trial management, even though other requirements under Rule 23 must still be satisfied. See*, e.g., Lazarin v. Pro Unlimited, Inc*., 2013 U.S. Dist. LEXIS 97213, *15 (N.D. Cal. 2013). As discussed herein, the disposition of the Action through implementation of the terms of the proposed Settlement is efficient and manageable.

## V. CONDITIONAL CERTIFICATION IS APPROPRIATE

Rule 23(e) requires that the court find a class settlement to be fair, reasonable and adequate before entering preliminary or final approval. The primary concern of Rule 23(e) is the protection of Class Members whose rights may not have been given adequate consideration during the settlement negotiations. *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255, *12 (S.D. Cal. 2014). Courts balance several factors in determining whether a settlement is fair, adequate and reasonable, in compliance with Rule 23(a), such as "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (citation and quotation marks omitted).

Moreover, at this preliminary stage and because class members will receive an opportunity to be heard on the settlement, "a full fairness analysis is unnecessary. . . ." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quotation marks omitted). Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls

with the range of possible approval . . . ."  Here, the proposed Settlement falls well within the range of reasonableness.

### A. <u>Arms-Length Negotiations</u>

The negotiations at the February 20, 2022 and April 28, 2023 mediations were adversarial. Brown Decl. ¶ 18. There is no indication that the negotiations were collusive or unfair to Class Members. This is particularly so given Plaintiffs moved for class certification prior to the second mediation. Brown Decl., ¶ 18.

### B. <u>The Risks, Complexity, Expense and Likely Duration of Further Litigation, and the Amount Offered</u>

In considering the complexity, expense, and likely duration of the litigation, courts weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or even more favorable result at trial. *Lane v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 24762, *19 (N.D. Cal. 2010); see *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 129 (2008) (The trial court "bears the responsibility to ensure that the recovery represents a reasonable compromise, given the magnitude and apparent merit of the claims being released, discounted by the risks and expenses of attempting to establish and collect on those claims by pursuing the litigation."). However, "[j]udicial policy favors settlement in class actions, as substantial resources can be saved by avoiding the time, cost, and rigors of formal litigation." *Clesceri v. Beach City Investigations & Protective Servs.*, 2011 U.S. Dist. LEXIS 11676, *22 (C.D. Cal. 2011).

Employment cases (including wage and hour cases) can be expensive and time consuming to prosecute. That this is a class and representative action further amplifies the economies of time, effort and expense achieved by this Settlement. \ Based on a review of documentary evidence and data produced by Defendants in the course of litigation and settlement negotiations, Class Counsel assessed the potential value of the class claims being released by the proposed Settlement (and explanation of the factors bearing on the amount of the compromise). *See* Brown

Decl., ¶¶ 21-29. Based on these calculations and factors the total exposure if Plaintiffs were successful on all claims at trial is 11,616,605 (excluding penalties under the PAGA). Brown Decl., ¶ 29. However, the realistic exposure for all claims is $407,585.20. *Id*. Accordingly, the Maximum Settlement Amount of $250,00.00 therefore represents approximately 61.34% of Plaintiffs' reasonably forecasted recovery, while avoiding the further expense and risk of proceeding with class certification and trial. *Id*. For the PAGA claim, based on the contested issues in this case, further argument from Defendants that Plaintiffs PAGA Notice failed to provide the necessary notice of claims alleged, and taking into the account the ability of the Court to significantly discount any PAGA penalty award, Plaintiffs discounted the PAGA exposure by 85%, resulting in an estimated realistic exposure of <u>$91,230.00</u>. Brown Decl., ¶ 30; *see also*, *Brown v. Ralphs Grocery Co.,* 28 Cal.App.5th 824, 835-87 (2018) (affirming a trial court demurrer order dismissing a PAGA claim based on the PAGA Notice at issue not sufficiently alleging facts and theories to support the alleged violations). The details of the exposure analysis and discounts for the PAGA claim is further detailed in Brown Declaration. Brown Decl., ¶¶ 21 - 30.

When weighed against the tremendous uncertainty of further litigation and the potential for the Class to receive nothing or wait through years of litigation and/or appeals, Class Members are far better served by the proposed Settlement than further and protracted litigation especially given this Court already denied Plaintiffs' first attempt Class Certification.

### C. <u>The Likely Expense and Duration of Further Litigation</u>

If Plaintiffs continued to prosecute the claims rather than accept the Settlement, they would have to engage in additional discovery disputes, file a renewed motion for class certification, prepare and file potential dispositive motions, engage in extensive trial preparation, and engage in years of appeals after a ruling on a renewed motion for class certification and/or dispositive motions

and/or an eventual trial on the merits. Brown Decl., ¶ 32. Any one of these stages could have stopped the Class Members from obtaining any recovery. *Id.*

## D. <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

Since filing the Nand Action on November 18, 2020, Class Counsel have worked diligently to prosecute the class claims, including engaging in numerous rounds of formal written discovery, taking and defending 22 depositions, interviewing and obtaining declarations from numerous Class Members, engaging in numerous lengthy discussions with Defendants' counsel, and pushing the case towards two mediations, all of which ultimately yielded the instant Settlement. Brown Decl., ¶ 33. In addition, Class Counsel worked through numerous hurdles in this case, including an order denying class certification, Individual Settlement Agreements that the Court may have held are enforceable after a contested motion on the issue, and other arguments raised by Defendants about the merits of this case. *Id.*

## E. <u>The Experience and Views of Counsel</u>

There is no reason to doubt Class Counsel's experience, knowledge or commitment. Class Counsel are highly experienced and knowledgeable regarding complex federal and state wage and hour class actions like this one. Brown Decl. ¶¶ 3 - 6; Surls Decl., ¶¶ 3 - 6; Kim Decl., ¶¶ 3 - 8; Han Decl., ¶¶ 3 - 8. Indeed, Class Counsel has handled many wage and hour cases on behalf of employees alleging claims just like those raised in this lawsuit. *Id.*

In sum, Class Counsel fully committed their resources to representing the class in this case, have the skill and expertise to do it properly, and will continue to do so. Class Counsel believes that the Settlement provides a fair recovery for the Settlement Class without the need of prolonged litigation in the face of the risks of prevailing and recovering any amounts. Brown Decl., ¶ 33. Accordingly, Class Counsel urges the Court to approve the Settlement based on their prior experience

and investigation of the case.

**F.  The Presence of a Governmental Participant**

The LWDA is a governmental participant in this action, as Plaintiffs have brought PAGA claims.  Plaintiffs have provided notice to the LWDA of the Settlement as required by statute.  See Exhibit H, Brown Decl., ¶ 18.  Moreover, Plaintiffs will provide notice to the LWDA if the Court grants final approval of the proposed class and representative action settlement. Brown Decl., ¶ 18.

## VI.  THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

### A.  The Class Notice Satisfy Due Process and Meet All of the Elements of FRCP Rule 23(C)(2)(B)

Rule 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice should describe: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, and/or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).

The content of the Parties' proposed class action notice and Request for Exclusion Form ("Notice Packet") herein fully complies with due process and Rule 23. The Notice Packet provides the definition of the class, describes the nature of the action, and explains the procedure for contesting data used to calculate estimated Participating Member Payments under the Settlement.  *See* Exhibits B and C; Brown Decl., ¶ 35.  The Notice Packet specifies the date, time, and place of the Final Approval hearing, and informs Class Members of their options upon receiving the notice (i.e., opt out, object, dispute the number of weeks worked, or do nothing). *Id*.  It explains the scope of the release that will take effect unless Class

Members timely opt out of the Settlement. *Id*. The proposed notice also informs the Settlement Class how the Settlement amount will be used to compensate Class Counsel for the approved amount of costs and fees and the named Plaintiffs' Enhancement Payments and General Release Payments. *Id*.

## B. **The Notice Satisfies Due Process Because It Is Calculated to Give All Settlement Class Members Notice Though Reasonable Effort**

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). However, actual notice is not required. See *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice by mail has been found by the Supreme Court to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp*., 2011 U.S. Dist. LEXIS 70377 (C.D. Cal. 2011) (quoting *Mullane*). The Settlement Administrator will use the United States Postal Service National Change of Address List to verify the accuracy of all addresses before the initial mailing date to ensure that the Notice Packet is sent to all Class Members at the addresses most likely to result in their immediate receipt. Settlement, ¶¶ 3(D)(iii), 6. With respect to returned envelopes, the Settlement Administrator will perform a routine skip-trace procedure to obtain a current address and promptly re-mail, by First Class U.S. Mail, the Class Notice. Settlement ¶ 6(C); *See also Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding due process was satisfied and class members whose notices were returned as undeliverable were properly included in the class where the administrator mailed notices to the last known address and demonstrated "reasonable effort" by performing skip-traces); *Gonzalez v. Preferred Freezer Servs. Lbf*, 2013 U.S. Dist. LEXIS 109930, *4-5 (C.D. Cal. 2013) (finding notice

constitutes "best notice practicable under the circumstances" where the administrator performed skip-trace on all mail returned as undeliverable). Thus, due process is satisfied.

Class Members who wish to challenge Defendants' records will have the opportunity to do so by submitting a written request to the Settlement Administrator. Settlement, ¶¶ 6(G)-(H). Class Members will have 60 days from the date the Settlement Administrator mails the Notice Packet to request exclusion or object to the Settlement. Settlement ¶¶ 6(E)-(F). This is sufficient time to give Class Members the opportunity to comment on the Settlement. *Vasquez*, 670 F. Supp. 2d at 1127 (approving 30-day notice period for class members to object, request exclusion, or mail claims for settlement shares in wage and hour case).

## VII. CONCLUSION

As set forth above, the proposed Settlement is fair, adequate, and well within the range of reasonableness. Further, the Settlement Class satisfies all of the elements of Rule 23 for conditional certification for settlement purposes. For these reasons, the Court should grant the instant motion and order the Notice Packet to be disseminated to Class Members.


Dated: June 30, 2023     VERUM LAW GROUP, APC


           By:    /s/ Sam Kim   
             Sam Kim
             Yoonis Han
             Attorneys for Plaintiffs SEVERO
             JOHN HERNANDEZ, UMEET
             NAND, KRISTOFER BARR, and
             all other similarly situated persons

Dated: June 30, 2023          STANSBURY BROWN LAW, PC

By:      /s/ Daniel J. Brown
              Daniel J. Brown
              Ethan C. Surls
        Attorneys for Plaintiffs SEVERO
        JOHN HERNANDEZ, KRISTOFER
        BARR, and all other similarly
        situated persons